UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TASC, INC.,<br>4801 Stonecroft Boulevard<br>Chantilly, Virginia  20151 | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: |
| 15036 Conference Center Drive, LLC,<br>15036 Conference Center Drive<br>Chantilly, Virginia 20151 | ) ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff TASC, Inc. ("TASC" or "Tenant"), by its undersigned counsel, files this complaint for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, to seek a judicial determination regarding its rights and obligations pursuant to an office lease between 15036 Conference Center Drive, LLC ("Landlord") as landlord and TASC as tenant, as modified. TASC has invoked its contractual right to terminate the lease and Landlord contests the termination.

TASC alleges the following in support of this declaratory judgment action:

### PARTIES

1.      Plaintiff TASC is a corporation incorporated under the laws of Massachusetts.  Its principal place of business is 4801 Stonecroft Boulevard, Chantilly, Virginia.

2.      Defendant Landlord is a limited liability company organized under the laws of Delaware.  Upon information and belief, Landlord is wholly owned, whether directly or through intermediary corporate entities, by Carr Properties, a real estate investment company with its

headquarters located in Washington, D.C., and/or a subsidiary of JP Morgan Chase, which is a New York corporation with a principal place of business in New York.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 2201, and 2202.  There is complete diversity of citizenship between plaintiff and defendants, and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.  An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties.

4.      This action is ripe for adjudication.  TASC has provided notice of its intent to terminate the Lease, and Landlord has responded that such termination is allegedly wrongful, and is making a demand that TASC pay all rent due under the Lease.

5.      Venue is proper pursuant to 28 U.S.C. § 1391, in that Defendant resides in this district.  Negotiations and communications regarding TASC's rights and obligations have also substantially occurred in this district.

## FACTS

1.      Defendant Landlord owns a commercial office building located at 15036 Conference Center Drive, Chantilly, Virginia (the "Building").

2.      Plaintiff TASC is a successor in interest under the Lease to TRW Systems Services Company, Northrop Grumman Federal Civil System Inc., and Northrop Grumman Information Technology, Inc., and leased space (the "Premises") in the Building.

3.      TASC's predecessor entered into an Office Lease with Landlord dated August 13, 2003 (the "Original Lease"), attached as Exhibit A.  The relevant parties subsequently executed multiple amendments to the Original Lease (the Original Lease, as amended, is referred to as the "Lease") that expanded the Premises and extended the terms of the Original Lease.  As relevant to the instant Complaint, the parties executed additional Lease amendments on October 10, 2003

2

("First Amendment"), attached as Exhibit B; February 24, 2004 ("Third Amendment"), attached

as Exhibit C; March 11, 2005 (the "Seventh Amendment"), attached as Exhibit D; and July 18,

2005, ("Eighth Amendment"), attached as Exhibit E.

4.      The Lease has always provided for termination rights in favor of the tenant, a

government contractor whose need for the building is contingent on the contracts it is awarded

by the federal government.

5.      On October 10, 2003, Landlord and Tenant executed the First Amendment to

lease additional space in the Building (the "Expansion Space") to accommodate its performance

of certain services under its contract with the National Imagery and Mapping Agency ("NIMA").

*See* Exh. B.  Section 11 of the First Amendment grants Tenant the right to terminate its lease for

the Expansion Space provided that Tenant satisfies the conditions in Addendum No. 3, attached

to the First Amendment ("Addendum").   Such conditions included the right to terminate the

Lease if TASC's contract with NIMA expired, or if NIMA relocated.  (*See* Exh. B., Addendum,

§(b)(ii)(w), (z)).  Section 11 granted the Tenant the ability to terminate the entire Premises, or

one or more full floors of the Premises, if the conditions set forth in the Addendum were met.  *Id.*

The Addendum also states that the exercise of the termination right shall have no impact or effect

on the continuing validity of the terms of the Lease.  (*See* Exh. B., Addendum, §(c)).

6.      On February 24, 2004, Tenant leased an additional 24,000 square feet of space

located on the third floor of the Building (the "Second Expansion Space"), memorialized in the

Third Amendment.  *See* Exh. C.  Section 8 of the Third Amendment incorporated by reference

the termination rights set forth in the First Amendment and stated that it "shall apply to the

Expansion Space, the Second Expansion Space, or any Designated Portion thereof."  *Id.* at 4, § 8.

In addition, Section 8 provides for a fee should Tenant exercise its right to terminate its lease for

3

the Second Expansion Space, and states that the payment of any particular termination fee under

the Third Amendment "shall not alter or modify Tenant's obligation to pay the Termination Fee

should Tenant exercise its right to terminate the Lease with regard to the Expansion Space"

under the First Amendment. *Id.* at 5, § 8.

7.      Tenant leased additional space in the Building from Landlord on March 11, 2005

("Third Expansion Space"), and again on July 18, 2005 ("Fourth Expansion Space").   The terms

of these agreements were memorialized in the Seventh Amendment and Eighth Amendments,

respectively. *See* Exh. D-E.  Section 8 of each of the Seventh and Eighth Amendments sets forth

the terms and conditions of the termination right for each of the additional spaces.  *Id.*

8.      The termination rights in the Seventh and Eighth Amendments are substantially

similar to those set forth in the Third Amendment.  *See id.* § 8.  Each of the Third, Seventh, and

Eight Amendments expands the scope of the tenant's termination rights, provides for a new

termination fee for each space, and states expressly that the payment of any particular

termination fee does not affect the tenant's obligation to pay each of the other termination fees

when so required.

9.      By letter dated February 21, 2011, TASC provided notice to Landlord that it was

serving its termination notice under § 8 of the Third Amendment for the Second Expansion

Space.  *See* Exhibit F, February 21, 2011 Letter ("2011 Termination Notice").  In the letter,

TASC notified Landlord of NIMA's intent to vacate the Second Expansion Space of the Building

by July 20, 2011, pursuant to TASC's termination rights under Section 8 of the Third

Amendment and the Addendum.

10.      Following the delivery of  the 2011 Termination Notice and the termination of the

Second Expansion Space, Landlord's Director of Lease Administration delivered a letter to

16439199v.2

TASC acknowledging the termination of the Second Expansion Space, specifically referencing the termination rights under Addendum No. 3 attached to the First Amendment.

11.     Subsequently, in Fall 2012, TASC explored the possibility of terminating the remaining portion of the Premises with Landlord and Landlord's agents due to the pending expiration of the NIMA Contract.  Landlord, through its asset manager, delivered via email a termination fee calculation for the remaining portion of the Premises based on a proposed termination effective date of February 2013.  Ultimately, TASC delayed the exercise of its termination right due to a short term extension of the NIMA Contract through June 28, 2013.

12.     By letter dated April 4, 2013, Landlord requested that TASC complete an estoppel certificate so that its affiliate, Carr Properties, could move forward with a corporate financing transaction for which the estoppel certificate was required.  The April 4, 2013 request asked TASC to confirm "basic terms of the lease through an estoppel form[.]"  *See* Exhibit G, April 4, 2013 letter.  As is customary, Landlord completed the estoppel certificate by filling out the estoppel certificate with the relevant business terms contained in the Lease.  Section 11 of the estoppel certificate provided by Landlord stated:  "TASC has early termination rights on its entire 128,162 SF Premises," subject to the condition outlined in Addendum No. 3.  *See id.*

13.     TASC made a variety of non-substantive corrections to the requested estoppel certificate, and executed and delivered the estoppel certificate to Landlord on or about April 10, 2013.  Among those non-substantive edits, TASC revised Landlord's paragraph 11 (renumbered as paragraph 13) to simply conform to the language provided in the Lease.  *See* Exhibit H, April 10, 2013 letter.

14.     After TASC submitted its completed estoppel certificate, it received a letter from Landlord dated May 3, 2013, noting that Landlord did not need the estoppel certificate after all,

16439199v.2

and bizarrely claiming for the first time that because TASC "already exercised the Termination Right on February 21, 2011," it no longer had an option to terminate the Lease under the Addendum. *See* Exhibit I, May 3, 2013 letter.

15.     TASC responded by letter dated May 21, 2013, disputing Landlord's contention that its right to terminate was a "one-time right" and outlining that such a position was neither supported by the Lease terms, nor the parties' course of dealing. *See* Exhibit J, May 21, 2013 letter.   As noted in its May 21, 2013 letter, TASC concluded that "its right to terminate the Lease as to the remainder of the Premises" was in "full force and effect." *Id.* at 3.

16.     By letter dated May 29, 2013, TASC's Director of Real Estate notified Carr Properties' Senior Vice President that TASC "anticipate[s] exercising our termination right" for all remaining leased spaces in the Building following the expiration of TASC's contract with the National Geospatial Intelligence Agency (formerly NIMA) on June 28, 2013. *See* Exhibit K, May 29, 2013 letter.   TASC's letter invited Landlord to discuss terms set forth therein to "expedite the process of shutting down this location and ending the Lease" prior to the expiration of the three-month notice period required under the Lease. *Id.*

17.     In a subsequent letter dated June 29, 2013, TASC exercised its termination right for the entire leased Building space pursuant to Section 11 of the First Amendment, Section 8 of the Seventh Amendment and Section 8 of the Eighth Amendment in accordance with the Addendum. *See* Exhibit L, June 29, 2013 Letter ("2013 Termination Notice").   In the letter, TASC invoked its termination rights under the Addendum for "Non-renewal" due to the expiration of the NIMA Contract on June 28, 2013.   (*See* Exhibit B, Addendum, (b)(ii)(w).)

18.     By letter dated August 1, 2013, counsel for Landlord responded to TASC's 2013 Termination Notice.   In it, counsel reiterated Landlord's untenable position that TASC's option

to terminate the Lease under the Addendum was a "one-time" right that was already exercised by

TASC on February 21, 2011 in connection with the termination of the lease for the Second

Expansion Space. *See* Exhibit M, August 1, 2013 letter.

19.     On September 19, 2013, TASC responded to Landlord's August 1, 2013 letter,

explaining that the Lease "does not state that the termination right is a one-time right, and such

an interpretation cannot be supported by a plain reading of the Lease itself." *See* Exhibit N,

September 19, 2013 letter.  Specifically, the termination criteria in the Addendum "are clearly

stated in the alternative, indicating that any one of the specific triggers may occur singularly or

collectively, or concurrently or nonconcurrently." *Id.*  TASC explained that subsequent

amendments to the Lease only support its position, and:

> bring the Second, Third, and Fourth Expansion Spaces within the scope of
> the termination right, each time with the emphasis that leased space can be
> terminated as to the whole, or as to Designated Portions, together with
> additional restrictions.

*Id.* at 2.  Finally, TASC noted that Landlord's conduct was inconsistent with its position that

TASC only had a "one-time" right to terminate the Lease.  TASC concluded by stating that it

considered the 2013 Termination Notice to be "valid and timely delivered" and that it intended to

vacate the Premises as set forth in its notice and the Lease.  *Id.*

20.     On October 9, 2013, Landlord responded to TASC's September 19, 2013 letter,

again claiming that TASC had no right to terminate under the Addendum.  In  addition,

Landlord claimed that TASC had defaulted under the terms of the Lease when it failed to pay

monthly rent and vacated the Building.  *See* Exhibit O, October 9, 2013 letter.

21.     Effective September 30, 2013, TASC vacated the premises.  In addition, pursuant

to its obligations under the Lease, TASC tendered to Landlord a check in the amount of

16439199v.2

$765,765.32 as payment for the aggregate termination fees payable with respect to the balance of the Premises.

22.     By letter dated November 12, 2013, Landlord purported to exercise its right under the Lease to terminate the Lease and accelerate all rent due under the Lease for the entire term. Accordingly, Landlord has demanded payment of $2,712,209.39.  *See* Exhibit P, November 12, 2013 letter.

### COUNT I
**(Declaratory Judgment)**

23.     TASC incorporates all of the previous allegations as if fully set forth herein.

24.     TASC believes and alleges that it rightfully invoked its termination rights under the Lease.

25.     By express terms of the Lease, a termination right is keyed to TASC's work on a particular government contract.  Because the contract terminated in June 2013, TASC's need for the space ended.

26.     TASC duly followed the notice requirements for its exercise of termination rights, TASC has satisfied all conditions precedent to bringing this action against Landlord, and TASC has provided the appropriate termination payment to Landlord.

27.     Nevertheless, Landlord is taking a position unsupported by the express terms of the Lease that the termination right was a one-time right that is no longer available to TASC.

28.     Accordingly, there exists an actual and justifiable controversy over whether TASC has rightfully invoked its termination rights under the Lease.

### PRAYER FOR RELIEF

WHEREFORE, TASC prays for judgment as follows:

16439199v.2

1.     That the Court adjudicate and declare that TASC has rightfully exercised its termination rights under the Lease as a consequence of it not being issued a renewal of any NIMA contract;

2.     That the Court hold that TASC's obligations under the Lease have been fully satisfied, with its financial obligation to Landlord limited to the already-tendered check in the amount of $765,765.32;

3.     That the Court awards TASC its attorneys' fees and costs, consistent with its rights under Section 42 of the Original Lease; and

4.     That the Court award TASC such other and further relief as the Court may deem just and equitable.

Dated:  November 15, 2013              Respectfully submitted

                                       TASC, INC.


                                       By:    /s/  Rebecca Woods
                                              Rebecca Woods (D.C. No. 468495)
                                              Seyfarth Shaw LLP
                                              975 F Street, N.W.
                                              Washington, D.C.  20004
                                              Telephone:  (202) 463-2400
                                              Facsimile:  (202) 641-9200
                                              rwoods@seyfarth.com

                                              *Counsel for Plaintiff TASC, Inc.*